THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
LONNIE GREEN, Defendant-Appellant.

First District (1st Division)   Nos. 1—88—0081, 1—88—1442 cons.

Opinion filed September 10, 1990.—Rehearing denied November 1, 1990.—
Modified opinion filed November 13, 1990.

Randolph N. Stone, Public Defender, of Chicago (Ellen Fishbein and Emily Eisner, Assistant Public Defenders, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'CONNOR delivered the opinion of the court:

Defendant Lonnie Green was found guilty of murder pursuant to section 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(2)) for the death of David Irons. The trial court sentenced Green to 40 years in the Illinois Department of Corrections. Green appeals. For the reasons below, we affirm

Green's conviction and sentence, but reverse the dismissal of his post-conviction petition.

On the late evening of July 12, 1986, Irons and his fiancee Sheena Nelson were in front of their residence at 917 N. Racine in Chicago, Illinois. While they were outside, Nelson saw Green and another man drive up in a baby blue car, get out, and argue with a man known as Mustafo. Then, they saw Mustafo leave for a short while, return with a gun, and shoot at Green in the blue car. When the shooting started, Nelson and Irons went into their house. Approximately one hour later, Nelson and Irons left the house and were sitting on a curb when they saw the same blue car again. The car stopped about 10 to 12 feet from where Nelson and Irons were sitting, and Green jumped out and said, "What's you be about?" When Irons answered, "I don't be about nothing," Green shot Irons. Irons died as a result of the shooting.

Around 2 a.m. on July 13, Officer Eric Strickland responded to the shooting. When he arrived, Nelson gave a description of the shooter. Officer Strickland's police report indicated that Nelson described the shooter as a black man, six feet tall, with a black "bushy AFRO," and a thick black mustache.

On July 15, 1986, Nelson identified James Winston as the car's driver and also identified a blue 1977 Oldsmobile as the car used in Irons' shooting. The blue Oldsmobile was registered to Darlene Taylor. Later, Detective Vucko went to Taylor's residence, where he spoke with Winston, the alleged driver of the blue Oldsmobile. After conversing, Detective Vucko and Winston went to the police station and talked further.

After speaking with Winston, Detective Vucko went to an apartment where he met Andrea Pollack, Green's friend, and Green. Green agreed to go to the police station. At the police station, Green told Detective Vucko that he had been at the Foster Avenue beach with Harold Thomas, Green's brother-in-law, and other friends on the night of July 12 until 4 a.m. on July 13.

On July 16, Nelson viewed a lineup and identified Green as the shooter and Winston as the driver. After the lineup, Green was arrested and spoke to Detective Vucko again. Green told the detective that on July 12 he, Winston, and Pollack had been driving around, and that they had stopped on Racine, where Winston spoke with a relative. According to Green, during Winston's conversation, there was a "problem" and a gun was fired, at which time Green, Winston, and Pollack left Racine and went to Foster Avenue beach, where Winston obtained a gun. Thereafter, the group returned to

Racine to find the person who had fired the shots earlier in the evening. According to Green, when the group returned to Racine, Winston shot Irons. But when Detective Vucko told Green that there were witnesses who saw him shoot Irons, rather than Winston, Green admitted that he shot Irons.

Shortly after the conversation, Detective Vucko returned with an assistant State's Attorney. Green spoke to the assistant State's Attorney and told her essentially the same thing. Later, Green gave a court-reported statement to the same effect to the assistant State's Attorney. Green reviewed the statement and signed it.

At trial, Patricia Green, Green's wife, testified that Green was on their apartment floor on July 12 from 11:45 p.m. until the next day.

Also at trial, defendant Green testified that on July 12, 1986, he and Winston had been at Foster Avenue park before driving to 917 North Racine, that at Racine, Winston argued with his brother-in-law, that after the argument, the brother-in-law left, returned with a gun, and started shooting. Then, Green, Winston, Harold Thomas, and some other friends went back to the beach to drink until the police told them to leave. Green testified that after leaving the beach, Green went home, fell on the floor and remained until 8 a.m. on July 13. Green also testified that after the police brought him to the police station between 10:30 and 11 p.m. on July 15, 1986, one of the officers came into the room and showed him a police report. The officer allegedly told Green that Winston gave a statement that implicated Green. The officer allegedly told Green that if he did not cooperate, he would get sentenced to a prison term for the duration of his natural life. Green asked the officer what he wanted Green to do, and then the officer rehearsed with Green the statement Green was to make about the killing. Green testified that an assistant State's Attorney arrived next and that he rehearsed the statement again.

After a jury trial, Green was found guilty of murder for the killing of Irons, and Green was sentenced to 40 years in the Illinois Department of Corrections.

On February 16, 1988, Green filed a *pro se* petition for post-conviction relief. On March 8, 1988, Green's petition appeared on Judge Himel's docket rather than on the original trial judge's, Judge Toomin's, docket. Judge Himel continued the case to March 18, 1988, on Judge Toomin's docket. On March 18, 1988, Judge Toomin continued the case until March 21, 1988. On March 21, 1988, 33 days after filing, the petition was heard and denied on the

grounds that it was patently frivolous and without merit.

Green appeals the conviction, sentence, and dismissal of his *pro se* post-conviction petition.

■■ ■ Green first argues that the trial court erred in refusing to admit Officer Strickland's testimony of Nelson's prior statement to Officer Strickland regarding the shooter's description, contending that he was prevented from impeaching Nelson, that he was prevented from introducing evidence that he was not the shooter, and that Strickland's testimony was admissible as a prior identification pursuant to section 115–12 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1985, ch. 38, par. 115–12). We disagree. Section 115–12 of the Code of Criminal Procedure of 1963 provides that testimony regarding prior identifications is not rendered inadmissible by the hearsay rule if "the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." (Ill. Rev. Stat. 1985, ch. 38, par. 115–12.) While it is true that a defendant is entitled to present evidence which proves the guilt of another for the crime with which he is charged, and that Officer Strickland's testimony regarding Nelson's prior description of the shooter would have been admissible pursuant to section 115–12 if presented at the proper time, the defendant must comply with the provisions of section 115–12 in offering such testimony into evidence. As implicitly required under section 115–12, evidence of prior identification is not admissible until the declarant has testified and become subject to cross-examination. Accordingly, the trial court properly restricted the cross-examination of Officer Strickland since Nelson had not yet testified as to the identification of the shooter. After Green's attorney cross-examined Nelson about the shooter's description and she replied that she did not remember, Green's attorney could have recalled Officer Strickland to testify during the defense's case in chief, but declined or failed to do so.

■■ Next, Green argues that in attempting to impeach his testimony, the State improperly introduced unsupported innuendos or insinuations surrounding Green's confession, which would constitute reversible error. We disagree. On direct examination, Green testified that he did not know the details of the murder until after his arrest when he was shown a police report of Winston's statement. On cross-examination the following exchange occurred between the People and Green:

"DEFENDANT: [Detective Vucko] [c]ame in with the re-

port. Then he said that it was the statement of James Winston. Then he read something in there with James Winston, said that I had shot this man and he drove the car. Okay.

ASSISTANT STATE'S ATTORNEY: Well, if I were to tell you that this police report was prepared after—.

DEFENSE COUNSEL: Objection, Judge.

ASSISTANT STATE'S ATTORNEY: After you were charged—.

THE COURT: Overruled.

ASSISTANT STATE'S ATTORNEY: And after the State's Attorney had left, could it have been a different police report or are you sure now still this is the same police report that Detective Vucko showed you?

DEFENDANT: I'm saying this is the one he showed me when he came into the interrogation."

The assistant State's Attorney properly cross-examined Green regarding both the facts and circumstances surrounding his confession (*People v. Burbank* (1972), 53 Ill. 2d 261, 269, 291 N.E.2d 161, *cert. denied* (1973), 412 U.S. 951, 37 L. Ed. 2d 1004, 93 S. Ct. 3017) and about his testimony on direct examination. (*People v. Lyles* (1985), 106 Ill. 2d 373, 402, 478 N.E.2d 291, *cert. denied* (1985), 475 U.S. 859, 88 L. Ed. 2d 141, 106 S. Ct. 171.) Moreover, the claimed error, *i.e.*, the insinuation that the police report containing Winston's statement that Green shot Irons did not exist until after the defendant made his admissions, would not have been reversible since it was not substantial, repeated, and prejudicial. (*People v. Jurczak* (1986), 147 Ill. App. 3d 206, 217, 497 N.E.2d 1332, *appeal denied* (1986), 113 Ill. 2d 564.) Here, there was no extended pattern of unsupported insinuation since the claimed error consisted of one question which had been rephrased by the assistant State's Attorney prior to Green's answer.

■ Next, Green incorrectly argues that the court erred in allowing the People to cross-examine Patricia Green about her failure to tell the assistant State's Attorney about her alibi testimony. To determine whether the alibi was recently fabricated, the court properly allowed the People to cross-examine Patricia Green about the circumstances of the alibi and whether she had previously told the same story. (*People v. Outlaw* (1979), 75 Ill. App. 3d 626, 645, 394 N.E.2d 541.) Moreover, this line of questioning was permissible as well as probative since Patricia Green was the only alleged witness to Green's whereabouts from 11:45 p.m. on July 12 until the next day. (*People v. Martinez* (1979), 76 Ill. App. 3d 280, 284-85, 395

N.E.2d 86.) Accordingly, we find neither a clear abuse of discretion nor prejudice to Green by the cross-examination of Patricia Green.

■■ Green also argues that he should be granted a new trial because the People failed to inform him of his false exculpatory statement on page five of the police report. This argument is erroneous because the State substantially complied with the discovery request and Supreme Court Rule 412 (107 Ill. 2d R. 412(a)(ii)). Illinois Supreme Court Rule 412(a)(ii) requires the People to disclose the *substance* of any oral statement made by an accused. The People had tendered the police reports which clearly contained Green's statement concerning Foster Avenue beach, even though the report erroneously stated Winston's name. It was clear that Green made the statement because it referred to Harold Thomas as the brother-in-law of the person making the statement, and Harold Thomas is Green's brother-in-law. Additionally, it was clear that pages three and four of the police report pertained to Winston, while page five and onward pertained to Green.

■■ Additionally, Green argues that the trial court abused its discretion when it sentenced him to 40 years' imprisonment because the trial court failed to consider his drinking problem and his "negligible" criminal past. The trial court did not abuse its discretion since evidence was introduced by defense counsel about Green's prior convictions and his drinking problem. "[W]here mitigation evidence is before the court, it is presumed that the sentencing judge considered the evidence, absent some indication, other than the sentence imposed, to the contrary." (*People v. Bergman* (1984), 121 Ill. App. 3d 100, 109, 458 N.E.2d 1370.) Accordingly, the trial court properly sentenced Green, and absent an abuse of discretion by the trial court, a sentence may not be altered on review.

■■ ■ Finally, Green argues that his *pro se* post-conviction petition was improperly dismissed since the petition was dismissed 33 days after it was filed and docketed. We agree. Section 122—2.1(a) of the Post-Conviction Hearing Act authorizes summary dismissals and provides in pertinent part:

> "Within 30 days after the filing and docketing of each petition, the court shall examine such petition and enter an order thereon pursuant to this Section. If the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order ***." (Ill. Rev. Stat. 1987, ch. 38, par. 122—2.1(a).)

Green contends that the 30-day period began to run when the petition was filed and docketed in any trial court, and the State con-

tends that the period began to run when the petition was filed and docketed in the original trial court. While it may be practical for the post-conviction petition to be heard by the original trial court judge because he or she is familiar with the case, we conclude that the statute's purpose, *i.e.*, to insure that post-conviction petitions are expeditiously reviewed, is served by holding that the 30-day period begins when the case is docketed on the docket call of any trial court with jurisdiction over such a petition, rather than allowing the post-conviction petition to be indefinitely continued until it is docketed to the original trial judge. While a new trial judge may not be familiar with the case, it is clear that "the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding." (Ill. Rev. Stat. 1987, ch. 38, par. 122–2.1(c).) Accordingly, the trial court's failure to summarily dismiss the petition within 30 days of filing and docketing renders the dismissal void. Consequently, the trial court's dismissal of Green's *pro se* post-conviction petition is reversed and the cause remanded for further consideration in accordance with sections 122–4 through 122–6 of the Post-Conviction Hearing Act.

In conclusion, the trial court properly excluded Officer Strickland's testimony regarding Nelson's description of the person who shot Irons; the assistant State's Attorney properly cross-examined Green regarding both the facts and circumstances surrounding his confession; the court properly allowed the People to cross-examine Patricia Green about the circumstances of the alibi and whether she had previously told the same story; the State substantially complied with the discovery request and Supreme Court Rule 412, and Green was properly sentenced. However, Green's post-conviction petition was improperly dismissed because 33 days had lapsed since it was filed and docketed. Green's conviction and sentence are affirmed, the dismissal of his post-conviction petition is reversed, and the case is remanded for further consideration of the petition.

Affirmed in part; reversed in part and remanded with directions.

BUCKLEY, P.J., and CAMPBELL, J., concur.