The UNITED STATES ex rel.  Robert DeCRETI, Petitioner,

v.

Patricia WILSON, Warden, Respondent.

No.  97 C 1697.

United States District Court,
N.D. Illinois,
Eastern Division.

May 28, 1997.

Robert DeCreti, Menard, IL, pro se.

Arleen C. Anderson, Attorney General's Office, Chicago, IL, for Respondent.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Petitioner Robert DeCreti, a prisoner in the custody of the Illinois Department of Corrections at Menard Psychiatric Center, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] DeCreti was convicted on October 21, 1991, in the Circuit Court of Cook County of attempted first-degree murder and intimidation—placing a ten-month old baby in the freezer compartment of a refrigerator and threatening the child's mother with a knife to prevent her from reporting the crime. DeCreti received concurrent sentences of twenty years and five years respectively.

On appeal, DeCreti contended that the evidence had not shown an intent to kill, since the child's brief confinement in the freezer did not threaten her life. He also claimed that he did not receive a fair sentencing hearing when the prosecutor impermissibly asked a witness whether she had "heard" that DeCreti had been charged with aggravated battery for shaking a baby. The Illinois appellate court rejected both contentions and affirmed his conviction and sentence on December 4, 1992, and the Illinois supreme court denied leave to appeal. A copy of the appellate court's opinion is an exhibit to the petition.

DeCreti filed a post-conviction petition on November 14, 1994, raising the same alleged errors and adding a claim that his trial counsel had been ineffective. DeCreti contended his attorney had been remiss in his efforts to locate alibi witnesses and investigate the complaining witness, the child's mother, who allegedly had a history of mental instability and drug and alcohol dependency. The petition was denied December 14, 1994. Although in his present habeas petition DeCreti checked the box indicating that he had received an evidentiary hearing on his post-conviction petition, his brief states that he did not. Pet. Br. at 14. The petition states that the denial of his post-conviction petition was affirmed by the Illinois appellate court, but DeCreti does not provide a copy of either the trial court or appellate decision. On December 26, 1995, DeCreti petitioned the Illinois supreme court for leave to file a petition for habeas corpus, in which he stated that he did not receive an evidentiary hearing on his post-conviction petition. The Illinois supreme court denied leave on March 28, 1996.

The present petition raises three grounds for relief: (1) his conviction for attempted murder is invalid because there was not a specific intent to kill; (2) he was denied a fair

---

1. The petition was originally filed in the Southern District of Illinois and transferred to this court pursuant to 28 U.S.C. § 1494(1).

sentencing hearing because the prosecutor repeatedly referred to an accusation of aggravated battery for which there was no evidence in the record; and (3) his counsel failed to adequately investigate and find his alibi witnesses. The first two were raised in his direct appeal, the third in his post-conviction petition.

■ Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires the court to conduct an initial review of habeas corpus petitions. The court may summarily dismiss a petition without ordering a response if it plainly appears from the face of the petition and its exhibits that the petitioner is not entitled to relief. *Small v. Endicott,* 998 F.2d 411, 414 (7th Cir.1993).

The two claims that DeCreti raised on direct appeal, lack of proof of intent to kill and prejudicial comments at his sentencing, can quickly be dismissed.[2] With respect to claims already decided against the petitioner in state court, a federal district court may grant a writ of habeas corpus only if the state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

■ A claim that the evidence was insufficient to establish an element of the crime beyond a reasonable doubt is tested by the standard of *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2792, 61 L.Ed.2d 560 (1979): the conviction must stand unless "it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." But a federal court entertaining a habeas petition no longer applies the *Jackson* test to the record *de novo.* After the 1996 amendments to § 2254, the only question before the court is whether the

state court's application of *Jackson* was reasonable. *Gomez v. Acevedo,* 106 F.3d 192, 199 (7th Cir.1997).

■ The Illinois appellate court reasonably applied the *Jackson* standard in holding that a rational factfinder could have found intent to kill beyond a reasonable doubt. The victim's mother testified that she found the baby "crushed up" in the freezer compartment of the refrigerator and that it was clear that DeCreti had put the baby there. Tr. at 15. DeCreti speaks of "momentarily" putting the child in the freezer, but that is his own characterization. A physician testified that the child had marks consistent with "freezer burn." She was not certain that this was their cause, but if they had been caused by contact with a cold object, the baby would have had to have been in the freezer for several minutes. Tr. 54–56. While it would have taken a substantial period of time for the baby to have died of either hypothermia or suffocation, and a trier of fact *could* have had a reasonable doubt that DeCreti intended to kill the baby rather than torture her, that doubt is hardly compelled by the record.

■ DeCreti's attack on his sentencing hearing can be dismissed even more quickly. A federal court will not normally review a state sentencing determination falling within statutory limits. *Gleason v. Welborn,* 42 F.3d 1107, 1112 (7th Cir.1994), cert. denied, —— U.S. ——, 115 S.Ct. 1961, 131 L.Ed.2d 852 (1995). The prosecutor's injection of unproven allegations did not render the sentencing fundamentally unfair. As the appellate court noted, the trial court expressly based the sentence on DeCreti's previous convictions and disclaimed reliance on unproved charges. Tr. 134. The cases cited by DeCreti involve review of federal convictions on direct appeal, where the standard of review is quite different. On direct appeal, a federal court of appeals reviews the district court's application of federal law, but on petition for habeas corpus a federal district court can review state court judgments only for

---

**2.** DeCreti has not submitted his brief before the Illinois Appellate Court. We assume for the purpose of initial review that the federal constitutional issues he seeks to raise here were properly presented to that court. *See Verdin v. O'Leary,* 972 F.2d 1467, 1473–74 (7th Cir.1992).

constitutional error and within a highly deferential framework.

DeCreti's third ground for habeas relief, first raised in his post-conviction petition, is that his trial counsel was ineffective for failing to locate alibi witnesses. The court does not have before it the state court's resolution of that claim. With respect to this ground for relief, the post-conviction petition stated only that

> The Petitioner also clearly states that his defense counsel provided him with ineffective assistance of counsel. This was when counsel failed to adequately produce the defense witness in entirety; by failing to subpeona [sic] alibi witnesses that could have refuted the testimony of the victim, as to the Defendant's whereabouts during the alleged aggravated battery & attempted murder. These said witnesses could have rebutted the testimony of katrina Lonngren; Plaintiff's witness and victim in the matter.

Post–conviction petition at ¶ (d).

The post–conviction petition did not name the witnesses or specify the information DeCreti's attorney had been given that should have enabled him to locate them. Nor did DeCreti provide affidavits as to what their testimony would be if called to testify. Apparently DeCreti hoped to persuade the court to appoint new counsel who would locate the witnesses, record their potential testimony, and prepare a supplemental or amended petition that would justify holding an evidentiary hearing. Not surprisingly, the trial court declined to do so and summarily dismissed the petition.

In this court DeCreti does not provide much more:

> [DeCreti] revealed to Mr. Wellish [defense counsel] the following "information," the names and address of his alibi witnesses and the address of Mr. James Balle along with his telephone number and the location of the following witnesses by first name only Paul & Ruthie, along with their business address. The Court continued the case from July 29, 1991 to October 15, 1991.

On October 15, 1991, the defendant informed the court that he had located this alibi witnesses (TR. 5) The trial court denied the defendant's request for a continuance so that he might locate his alibi witnesses. (TR. 6)

The defense counsel admitted that the defendant had given him a general location where he might be able to locate the witness. (Tr. 6–7) Defense counsel never attempted to locate the witnesses. Defense counsel then proceeded to trial.

Pet.Br. at 13.

The transcript adds the critical fact that the address DeCreti had given his counsel was invalid. DeCreti asked the court for a continuance on the day of trial, October 15, 1991:

DEFENDANT DECRETI: I would like to motion the Court because I need, I found one of my witnesses and I got somebody to look for him, to get ahold of my other witness.

THE COURT: Who might that be?

DEFENDANT DECRETI: His name is Paul. I am not sure of his last name.

THE COURT: Do you know where Paul lives?

DEFENDANT DECRETI: I have a phone number from a person who knows were [sic]. He was evicted. He is supposed to be staying with his girlfriend. They are trying to find out right now his address and phone number. I have a phone number of the person who is looking for him for me.

\* \* \* \* \* \*

THE COURT: [after determining that the state is ready for trial] Assuming the case will go ahead, I would respectfully deny your request for a continuance.

\* \* \* \* \* \*

THE COURT: Mr. Decreti, in the event that you may find this witness, through your attorney you may renew your request for a continuance after we see how this case is going to proceed, and I would be more than happy to reconsider that request in light of the fact that this is going to be a bench trial.

The case was then passed. When it was recalled, the following colloquy occurred:

MR. WELLISH [defense counsel]: This is Robert Decreti.... We are ready to begin the trial. It is my understanding there is one thing that I would like to say before we begin. Mr. Decreti told you earlier and I confirmed this, we are currently and have been during the duration and pendency of the case looking for a witness, alibi witness. Obviously, I don't have a formal name and address, but I orally want to put in the defense of alibi at this time and supplement it later.

MS. MEBANE [prosecutor]: As to the address, if he is putting in the defense alibi, I am sure his client has informed him of the location. He can give the location now.

THE COURT: Does your client have an address?

MR. WELLISH: The original address he had moved from, and I don't believe that Mr. Decreti knows or knew the exact address at the time, just a general location.

THE COURT: Give me the general location.

MR. WELLISH: First Floor, rear apartment, 34th and Leavitt.

MS. MEBANE: You have no idea of the name of the person you are searching for?

MR. WELLISH: We have a first name, Paul. We do not have a last name.

*     *     *     *     *     *

Tr. 5–8.

The trial did not conclude on October 15, but resumed on October 21, 1991, when the defense offered its only witness. Paul was apparently not found; as far as can be determined from the petition, he was never found.

■ In order to show that his counsel's representation was so defective as to have violated his Sixth Amendment right to counsel, a petitioner must show not only that his attorney's representation fell below an "objective standard of reasonableness" under "prevailing professional norms," *Strickland v. Washington,* 466 U.S. 668, 688, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984), but that "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068; *Mason v. Godinez,* 47 F.3d 852, 855 (7th Cir.1995), cert. denied, —— U.S. ——, 116 S.Ct. 125, 133 L.Ed.2d 74 (1995). Here, this translates into a requirement that DeCreti allege facts tending to show that (a) a reasonably competent attorney would have been able to locate the witness or witnesses, and (b) that the witness(es)' testimony would probably have changed the outcome.

■ Defense counsel has an obligation to make a reasonable investigation, *Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066, and De-Creti alleges that his attorney "never attempted to locate the witnesses." But De-Creti does not say how he knows this, and the reasonable inference from the transcript is to the contrary. There is no explanation of how a competent attorney would have been able to locate them, other than DeCreti's allegation that his attorney failed to use the investigator in the Public Defender's office. Pet. Br. at 13. DeCreti states in his brief that he gave counsel an address, but the transcript shows that counsel stated, in his presence and without objection, that the witness no longer lived there. Further, it appears that DeCreti had friends and acquaintances looking for the witness and was not relying on counsel to find him: "I have a phone number from a person who knows were [sic]. ....They are trying to find out right now his address and phone number. I have a phone number of the person who is looking for him for me."

If these allegations of counsel's incompetence are inadequate, the allegations of prejudice are nonexistent. Nowhere does DeCreti state what the testimony of these missing witnesses would have been. DeCreti's claim thus rests on a double speculation, that a competent attorney would have found a witness or witnesses, and that he or they would have confirmed an alibi defense, an alibi defense that was never raised because DeCreti chose not to testify.

■ Of course, the failure of defense counsel to locate alibi witnesses can be grounds for habeas relief. But the kind of

vague and speculative allegations DeCreti makes are insufficient. "Notice pleading" is not sufficient in habeas cases, since "the petition is expected to state facts that point to a 'real possibility of constitutional error.'" Advisory Committee Note to Rule 4 (quoting *Aubut v. State of Maine,* 431 F.2d 688, 689 (1st Cir.1970)).

◼ Further, even if the allegations of the petition were sufficient to raise a claim of ineffective assistance of counsel, DeCreti could establish his entitlement to habeas relief only through an evidentiary hearing, and he is not entitled to one. The federal habeas statute now provides that

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2). This would foreclose an evidentiary hearing here. It is doubtful that the supposed alibi testimony would have been such "clear and convincing" evidence that no reasonable factfinder could have found DeCreti guilty. In any event, the factual basis of his claim, the existence of alibi witnesses and his counsel's failure to make reasonable efforts to locate them, was known to him no later than the time of his post-conviction petition in 1994.

If § 2254(e)(2) applies to cases where the evidence supporting the petitioner's claim existed at the time of the state court proceedings, but the state court denied the petitioner the opportunity to develop and present it, a federal evidentiary hearing is foreclosed even if the petitioner was not at fault. The Third Circuit recently stated that "failed to develop" in § 2254(e)(2) implies fault on the part of the petitioner, and so its limitations do not apply where some factor not fairly attributable to the petitioner prevented evidence from being developed in the state court. *Love v. Morton,* 112 F.3d 131, 136 (3d Cir. 1997). This was dictum, since the petition had been pending at the time of the 1996 AEDPA amendments to § 2254 and, unlike the Seventh Circuit, the Third Circuit does not apply § 2254(e) to petitions filed before the amendments took effect. The Seventh Circuit has also speculated along this line, while acknowledging that Congress could have intended the more drastic limitation. *See Porter v. Gramley,* 112 F.3d 1308, 1317 n. 8 (7th Cir.1997) (dictum). On the other hand, district courts in this circuit have applied § 2254(e)(2) regardless of whether the failure is attributable to the fault of the petitioner. This seems to be the plain meaning of "failed," which does not necessarily imply fault. See *U.S. ex rel. Harris v. Wilson,* No. 97 C 0259, 1997 WL 260284 (N.D.Ill. 1997) (Holderman, J.); *U.S. ex rel. Crivens v. Washington,* No. 94 C 1973, 1997 WL 120017 (N.D.Ill.1997) (Grady, J.): *Burris v. Parke,* 948 F.Supp. 1310, 1324–26 (N.D.Ind.1996).

It is unnecessary to decide between these interpretations here, because the failure of the state court to hold an evidentiary hearing was solely a consequence of DeCreti's wholly inadequate petition. In view of the vague and conclusory allegations of the petition, it would have been surprising if the court *had* ordered a hearing, and the decision to dismiss the post-conviction petition rather than order an evidentiary hearing was reasonable. Even if the limitations of 28 U.S.C. § 2254(e)(2) do not apply, under pre-AEDPA law DeCreti would have had to show good cause excusing his failure to properly support his post-conviction petition. *See Keeney v. Tamayo–Reyes,* 504 U.S. 1, 11, 112 S.Ct. 1715, 1721, 118 L.Ed.2d 318 (1992) (habeas petitioner entitled to evidentiary hearing in federal court only if he shows cause and prejudice for failing to develop facts in state court). Nothing in the petition suggests he can meet that standard.

Finally, even if we had discretion to appoint counsel for DeCreti and order an evidentiary hearing, we would not do so. DeCreti's conviction can be reversed only if he can show that (a) alibi witnesses existed, (b) their testimony would have been credible, (c) his attorney could have located them with reasonable efforts, and (d) he did not make reasonable efforts to locate them. The petition gives us no reason to believe that he could establish any of these points. In particular, it would be virtually impossible to prove items (a) and (b) without locating witnesses, whose full names and addresses were unknown in 1991, and, apparently, have remained unknown since.

For the foregoing reasons, the petition is dismissed pursuant to Rule 4.