**Daniel ALVAREZ, Petitioner,**

v.

**William D. O'SULLIVAN, Respondent.**

No. 98 C 8338.

United States District Court,
N.D. Illinois,
Eastern Division.

July 16, 1999.

*MEMORANDUM OPINION
AND ORDER*

CASTILLO, District Judge.

Daniel Alvarez petitions this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Following a jury trial, Alvarez was convicted of attempted first-degree murder and sentenced to 40 years' imprisonment. Alvarez asserts four grounds for relief in his petition: 1) the preclusion of cross-examination on the victim's tendency to faint denied his right to confront witnesses; 2) the exclusion of pre-trial non-identification statements violated his right to present a defense; 3) the cumulative effects of these alleged Sixth Amendment violations deprived him of a fair trial; and 4) the trial evidence was insufficient to support his conviction beyond a reasonable doubt. After careful review of these issues, we conclude that Alvarez has not established a violation of his constitutional rights. Therefore, we

deny his petition for a writ of habeas corpus.

## RELEVANT FACTS [1]

Daniel Alvarez and Alicia Godina dated periodically for five years until spring 1993, when Godina ended the relationship. Godina encountered Alvarez several times that summer; he repeatedly, but unsuccessfully, attempted to rekindle their relationship. While walking to the train station on the morning of December 14, 1993, Godina heard footsteps approaching behind her. She testified that she turned her head to see Alvarez holding a knife. He began stabbing her in the chest. He then swung Godina around to face him, threw her against a fence, and continued stabbing her. Alvarez momentarily stopped his attack to chase a third person while Godina stood on the sidewalk feeling faint. Alvarez returned, pinned the victim to the ground, and proceeded to cut her throat. Godina then closed her eyes, feigning death, and Alvarez ran off. She testified that a gentleman helped her until an ambulance took her to the emergency room. At the hospital Godina told Thelma Kuska, a nurse, that she was stabbed by her ex-boyfriend. Kuska's testimony at trial corroborated this statement.

Peter Thompson, the gentleman who helped Godina, testified that he saw the attacker as he rounded a corner by his home. Godina's attacker fled as Thompson neared the scene with a baseball bat. Several months after the crime, Thompson viewed a photo of Alvarez and later met him in person; on both occasions, Thompson stated that Alvarez was not the man he saw stabbing Godina. (Pet. Ex. F, Trial Tr., at 17–19; Pet. Ex. B, Pet'r. Aff. at 26–33; Pet. Ex. C, Vasquez Aff., at 11–14.) Although Thompson was not permitted to disclose these out-of-court statements during the trial, he did testify that Alvarez was not the attacker. (Pet. Ex. F,

Trial Tr., at 26–27; Pet. Ex. H, Trial Tr., at 14–18, 20, 51–53.)

According to Alvarez, he was pursuing a job at Royal Crown Cola (RC Cola) at the time of the attack. He arrived at the RC Cola plant at about 6:30 a.m. or 6:35 a.m.; an employee, Michael Arragoni, told Alvarez to come back later for an interview. Alvarez then saw a friend, Sal Lira, who suggested that he wait at a local restaurant. Alvarez testified that he ate and returned to RC Cola at 7:40 a.m. At trial, both Arragoni and Lira corroborated Alvarez's account of the morning. A security guard, Michael Kuciver, testified that Alvarez arrived at the plant at 6:10 a.m., left around 6:25 a.m., and returned between 7:39 a.m. and 8 a.m. After being hired at RC Cola, Alvarez went home. Later that day, he consented to a police search of his house and car and denied any knowledge of the stabbing. The police officers did not recover any physical evidence linking Alvarez to the crime. (Pet. Ex. G, Trial Tr., at 123; Pet. Ex. I, Trial Tr., at 51.)

During the trial, the two sides presented conflicting testimony about the length of time that Alvarez would have needed to drive from the RC Cola plant to the crime scene during morning rush hour. Alvarez's investigator, John Eirman, stated that it took him at least 43 minutes to drive the 17–mile distance. Alternatively, Detective Raymond McCann testified that he completed the drive in as little as 28 minutes, depending on the time of day.

To impeach Godina's identification of Alvarez as her attacker, defense counsel attempted to question her on her tendency to faint, suggesting that she may have lost consciousness during the attack. (Pet. Ex. G, Trial Tr., at 97–99.) In response, Godina testified that she did not faint the day of the stabbing. The trial court then for-

---

**1.** This Court presumes the factual determinations of the state court are correct. 28 U.S.C. § 2254(e)(1); *Sumner v. Mata*, 449 U.S. 539, 547, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Unless otherwise noted, we have adopted the facts as presented in the Illinois appellate court's unreported opinion, *People v. Alvarez*, No. 94 CR 548–01, slip op. at *1–6 (Ill.App.Ct. 1998). Alvarez does not dispute these factual findings in his petition.

bade any further cross-examination on her fainting history.

Based on this evidence, the jury found Alvarez guilty of attempted first-degree murder. The Illinois appellate court affirmed his conviction and subsequently denied his petition for rehearing. (Pet'r.'s Mem. Supp. at 2.) Alvarez filed a Petition for Leave to Appeal with the Illinois Supreme Court, which was rejected. (Pet'r.'s Mem. Supp. at 2.) Having exhausted state remedies, he now seeks habeas corpus relief in this Court. (Pet'r.'s Mem. Supp. at 11–12.) Before assessing the merits of his claims, we set forth the applicable standards that guide our analysis.

## STANDARD OF REVIEW [2]

■ Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA), a federal court must deny habeas relief unless the state court's adjudication "resulted in a decision contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).[3] The standard for mixed questions of law and fact is whether the state court's application of clearly established Supreme Court law was reasonable. *Spreitzer v. Peters*, 114 F.3d 1435, 1441 (7th Cir.1997). A state court has reasonably applied Supreme Court caselaw if its application is "at least minimally consistent with the facts and circumstances of the case." *Id.* at 1442. Under this limited analysis, the state court's decision must stand "if it is one of several equally plausible outcomes." *Ashford v. Gilmore*, 167 F.3d 1130, 1134 (7th Cir.1999), *quoting Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir.1997). Having set forth the applicable standards for federal habeas corpus

review, we will now address the merits of Alvarez's claims.

## I. Prevention of Cross–Examination as Violation of Confrontation Clause

■ Alvarez claims that his Sixth Amendment rights were violated when the trial court prohibited cross-examination of Godina's fainting history. He correctly notes that courts have the power to limit cross-examination where the interrogation is "repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Alvarez contends that the trial court erred in finding the fainting evidence irrelevant and inadmissible because it concerned the witness' ability to observe and recall events. He points out that Godina testified to feeling faint during the attack, that she was unconscious prior to her surgery, and that Thompson's account of the attack differs from Godina's testimony. Therefore, the record evidence raises the inference that she may have fainted that day, impairing her ability to identify Alvarez and damaging her credibility. He argues that the state appellate court's review of this claim was "superficial" because that court ignored this evidence and prior state appellate court decisions. *See, e.g., People v. Stalions*, 139 Ill.App.3d 1033, 94 Ill.Dec. 471, 488 N.E.2d 297, 301–02 (1986) (allowing cross-examination on a witness' glue-sniffing habit to assess mental processes and credibility); *People v. Spreyne*, 256 Ill.App.3d 505, 194 Ill.Dec. 754, 628 N.E.2d 251, 256 (1993) (permitting cross-examination on the defendant's alcohol consumption on the day of the crime to test his ability to observe and remember events).

**2.** Alvarez has procedurally exhausted his claims by presenting his federal claims to each available state tribunal on direct appeal. Thus, he has properly preserved all issues for our consideration. *O'Sullivan v. Boerckel*, 526 U.S. 838, ——, 119 S.Ct. 1728, 1731, 144 L.Ed.2d 1 (1999). Furthermore, the State does not object to the presentation of the issues before us. *See U.S. ex rel. Gonzalez v.*

*DeTella*, 918 F.Supp. 1214 (N.D.Ill.1996), *aff'd*, 127 F.3d 619 (7th Cir.1997). Therefore, we proceed directly to analyze the standards and merits of the substantive issues.

**3.** Because Alvarez does not challenge the state court's factual findings, we need not discuss the standards established in 28 U.S.C. § 2254(d)(2).

The Confrontation Clause guarantees a defendant "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer,* 474 U.S. 15, 20, 106 S.Ct. 292, 88 L.Ed.2d 15 (1985). Additionally, the subject of admissibility of evidence is generally a matter of state concern. *Estelle v. McGuire,* 502 U.S. 62, 65–69, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *U.S. ex rel. Bryant v. Washington,* 869 F.Supp. 601, 603 (N.D.Ill.1994). Our task is not to "second-guess" the correctness of the trial court's rulings based on state evidentiary rules; rather, we are only to decide if a constitutional right has been violated by those determinations. *Koo v. McBride,* 124 F.3d 869, 874–75 (7th Cir.1997). To make this decision, we balance the effect of the precluded evidence on the defendant's Sixth Amendment rights against the state's interest in excluding the evidence in question. *Tague v. Richards,* 3 F.3d 1133, 1137–39 (7th Cir. 1993).

The trial court's limitation on the cross-examination of Godina could be constitutional error if her fainting history was genuinely relevant to substantive issues in the case. A witness' testimony should be subject to cross-examination if it is clearly probative of the witness' cognitive ability to recognize and identify an offender. *Henderson v. DeTella,* 97 F.3d 942, 949 (7th Cir.1996) (holding that an inquiry into a witness' drug use is permissible only if it relates to the cognitive abilities of the witness at the time of the offense or other pertinent time); *United States v. Miranda,* No. 94 CR 714, 1997 WL 627655, at *8 (N.D.Ill. Sept. 22, 1997) (allowing the defendant to question a witness on drug use that may have impaired "his ability to perceive, recall, and recount events at issue during the time period at issue"). Here, the line of questioning proposed by Alvarez would not have probed Godina's ability to identify him the day of the stabbing because she had already testified that she remained conscious during the attack. That she had fainted on three previous occasions, none of which had any relation to each other or to the circumstances of the stabbing, does not establish that she may have fainted while being stabbed. The *Henderson* court held that a state trial court properly excluded evidence of a witness' drug use on occasions that were not clearly related to the crime. 97 F.3d at 949. Likewise, the trial court here could properly prevent cross-examination about fainting spells that were completely unrelated to Godina's ability to recall the crime.

Alvarez argues that the evidence shows Godina may have fainted that day because 1) she was unconscious immediately before her operation, 2) she said that she "felt faint" several times, and 3) her testimony differed from Thompson's. However, these facts do not necessarily raise the inference that she fainted. While she was unconscious before the operation, she was awake in the emergency room when she spoke with nurse Kuska. The record contains no evidence to suggest that she was unconscious prior to the operation. Although Godina did say that she "felt faint," she also testified that she did not faint the day of the attack. *U.S. ex rel. Poole v. Gramley,* No. 94 C 4148, 1997 WL 403689, at *4 (N.D.Ill. July 15, 1997) (noting that a witness' drug use was not relevant at trial because the victim had already denied using drugs at any relevant time). Additionally, the discrepancies between Thompson's and Godina's accounts of the attack do not demonstrate that she passed out. Her story, though different from his, is detailed and complete. Furthermore, Thompson, a defense witness, said that he found Godina lying on her back; yet he did *not* testify that she was unconscious at anytime during the attack. The State's interest in eliminating irrelevant and possibly confusing evidence outweighs Alvarez's interest in presenting evidence that does not concern the witness' ability to identify him.

Though we need not consider the effect of the trial court's decision, we

continue our analysis to show the harmless nature of the alleged error. An error is harmless absent a showing that the decision had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), *quoting Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *see also Tague*, 3 F.3d at 1140. A federal reviewing court cannot grant habeas corpus relief based on a trial error unless the petitioner demonstrates actual prejudice. *Brecht*, 507 U.S. at 637, 113 S.Ct. 1710. Trial error is not prejudicial unless the petitioner can establish that it caused the conviction of an innocent person, *Thompkins v. Cohen*, 965 F.2d 330, 333 (7th Cir.1992); *Gonzalez*, 918 F.Supp. at 1220, or at least that the outcome of the trial would have been different if not for the error, *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Austin v. Peters*, No. 89 C 2304, 1990 WL 139272 (N.D.Ill. Sept.17, 1990).

In light of the *Brecht* standard, we cannot say that the state trial court's exclusion of the fainting evidence had a substantial effect such that the outcome of the trial would have otherwise been different. Alvarez argues that the jury "might have inferred that she did faint" from evidence of Godina's prior fainting spells, but such a weak assertion does not show that this decision worked to his *actual* disadvantage. *Carrier*, 477 U.S. at 494, 106 S.Ct. 2639; *Maciel v. Carter*, 22 F.Supp.2d 843, 854 (N.D.Ill.1998). Even if the trial court had allowed defense counsel to pursue this line of questioning, Godina nonetheless testified that she did not faint during the attack. Her statement was corroborated by the details she recounted and, as the Illinois appellate court noted, by the defensive wounds on her wrists. Even if the evidence permitted the jury to conclude that Godina did faint at some point, she was not unconscious for the entire attack and had ample opportunity to view and identify her attacker. Alvarez fails to show that the preclusion of this evidence actually prejudiced the outcome of his trial.

We move now to consider the reasonableness of the Illinois appellate court's application of established law to this alleged error. The appellate court correctly set forth the issue, the trial court's reasoning, and the applicable standard of review. The appellate court agreed that the fainting history was not relevant without evidence that she fainted during the attack. The appellate court cited evidence from the record to support its conclusion that the trial court had not abused its discretion in preventing the cross-examination. The appellate court's review was brief, but logical and reasonable. Therefore, it "must be respected ... because the grave remedy of upsetting a judgment entered by another judicial system after full litigation is reserved for grave occasions." *Lindh v. Murphy*, 96 F.3d 856, 871 (7th Cir.1996), *rev'd on other grounds*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997).

## II. Exclusion of Non-identification Statements as Violation of Compulsory Process Clause

 Alvarez next claims that the trial court violated his Sixth Amendment right to present a defense when it excluded Thompson's two out-of-court statements that Alvarez was not the attacker. According to Alvarez, the trial court erred in finding that Thompson's proposed testimony did not fall within the identification exception to the hearsay rule as prescribed by § 115–12 of the Illinois Code of Criminal Procedure of 1963. 725 ILCS 5/115–12 (West 1994). Although Alvarez would have us review the trial court's state law determinations, we have neither the power, nor the inclination, to do so. This Court cannot sit as a super-appellate body and consider state law matters.

 Applying *Brecht* demonstrates the futility of Alvarez's argument. Even if we had determined that the state trial court's ruling was unconstitutional, any error

would have been harmless. Thompson testified at trial that Alvarez was not the attacker. If permitted, the repetition of that statement would not have lead to Alvarez's acquittal, especially since Godina's unimpeached identification was also presented to the jury. *See Murray,* 477 U.S. at 488, 106 S.Ct. 2639. The possibility that repetition of Thompson's testimony could have carried weight with the jury is insufficient to establish actual prejudice as required by *Brecht. See Maciel,* 22 F.Supp.2d at 854.

Alvarez maintains that the appellate court erred because it failed to consider federal cases from the United States Courts of Appeals for the Second and Third Circuits. *See United States v. Brewer,* 36 F.3d 266 (2nd Cir.1994) (holding that the identification exception of Fed. R.Evid. 801(d)(1)(c) encompasses prior failures to identify); *United States v. Brink,* 39 F.3d 419 (3rd Cir.1994) (permitting exculpatory testimony on robber's eye-color under the identification exception to Fed. R.Evid. 801(d)(1)(c)). While these federal decisions generally support Alvarez's interpretation of the identification exception, they are certainly not binding on the Illinois appellate court. *See Lindh,* 96 F.3d at 869 ("State courts must knuckle under to decisions of the Supreme Court, but not of this court."). Furthermore, neither case concerns the interpretation of the Illinois Code; both involve the Federal Rules of Evidence.[4]

Overall, we find the appellate court's review of this alleged error to be entirely reasonable. The appellate court relied upon the Illinois Code and referred to the Illinois Supreme Court's Hayes decision. The appellate court's brief review of this issue was a reasonable application of the law and, because the hearsay rule was not "applied mechanistically to defeat the ends of justice," was consistent with Supreme Court caselaw *Chambers v. Mississippi,* 410 U.S. 284, 302, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) (holding that the right to present a defense still must conform with established rules of evidence to "ensure fairness and reliability in the ascertainment of guilt and innocence").

## III. Cumulative Effects of Trial Errors as Violation of Right to Fair Trial

In some cases, the cumulative effect of trial errors may effectively deprive a defendant of the right to a fair trial as guaranteed by the Fourteenth Amendment. *See, e.g., United States v. Haddon,* 927 F.2d 942 (7th Cir.1991); *United States v. DeGeratto,* 876 F.2d 576 (7th Cir.1989). Such a violation would require a combination of trial errors that alone would not have created an issue of Constitutional magnitude. However, because Alvarez has failed to demonstrate any trial or appellate errors, we must reject this claim. *See Maciel,* 22 F.Supp.2d at 857; *Gonzalez,* 918 F.Supp. at 1225.

## IV. Failure to Be Proven Guilty Beyond a Reasonable Doubt as Violation of Fourteenth Amendment

■ Alvarez's final claim is that he was not proven guilty beyond a reasonable doubt in violation of the Due Process Clause. *See In Re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). He contends that (1) the lack of physical evidence connecting him to the crime, (2) Thomson's exculpatory testimony, (3) the

4. Alvarez argues that the appellate court should have followed a previous decision of the Illinois Appellate court. *People v. Green,* 204 Ill.App.3d 461, 150 Ill.Dec. 474, 563 N.E.2d 61, 63 (1990) (holding that an exculpatory description of the defendant would have been admissible under the identification exception, if the issue had been raised at the proper time). It is not the business of this Court to review how Illinois courts apply and interpret Illinois law. Furthermore, the appellate court here was not required to rely on the *Green* decision. The appellate court reasonably followed a more recent Illinois Supreme Court decision that clearly prevented admission of non-identification testimony. *People v. Hayes,* 139 Ill.2d 89, 151 Ill.Dec. 348, 564 N.E.2d 803, 824 (1990) (holding that a witness' out-of-court statements are not admissible where the testimony does not actually identify the defendant).

time frame and interview alibi, and (4) the unreliability of Godina's identification, should have raised reasonable doubts in the mind of any rational juror. He argues that the state appellate court's review of this issue was unreasonable because it considered the pieces of evidence in isolation, rather than in conjunction. *See United States v. Maldonado–Rivera,* 922 F.2d 934, 978–79 (2nd Cir.1990) (noting that pieces of evidence must be viewed in conjuction, rather than in isolation).

█ A state appellate court facing a sufficiency of the evidence claim must determine whether, after reviewing the record evidence "in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under AEDPA, this Court may grant a writ of habeas corpus only if the reviewing state court unreasonably applied the *Jackson* test. *Gomez v. Acevedo,* 106 F.3d 192, 199 (7th Cir.1997); *U.S. ex rel. DeCreti v. Wilson,* 967 F.Supp. 303, 305 (N.D.Ill. 1997). This Court cannot choose evidence it prefers or make its own credibility determinations—these tasks are the sole responsibility of the trier of fact. *Ford v. Ahitow,* 104 F.3d 926, 937–39 (7th Cir. 1997). To satisfy this standard, Alvarez must offer more than an argument for innocence. *Bryant,* 869 F.Supp. at 602. Rather, he must show that the facts of the case "establish by clear and convincing evidence" that no reasonable fact-finder would have found him guilty, absent constitutional error. 28 U.S.C. § 2254(e)(2)(B). In short, the writ may be granted only if doubt is *compelled* by evidence in the record. *DeCreti,* 967 F.Supp. at 305.

█ Though Alvarez believes that the Illinois appellate court should have followed *Maldonado–Rivera'* s collective evidentiary analysis, we have found no reliance on that case or proposition in this Circuit. As noted earlier, a decision from a foreign federal circuit is not binding on the Illinois appellate court. *See Lindh,* 96 F.3d at 869. The state appellate court had no power to reweigh evidence or substitute its judgment for that of the jury. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *Ford,* 104 F.3d at 937–38. A conviction may be reversed "only when the record is devoid of any evidence, *regardless of how it is weighed,* from which a jury could find guilt beyond a reasonable doubt." *United States v. Ross,* 77 F.3d 1525, 1542 (7th Cir.1996) (emphasis added).

Finally, we consider the reasonableness of the appellate court's review of Alvarez's sufficiency of the evidence claim. That court cited the correct "no rational trier of fact" standard. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *People v. Collins,* 106 Ill.2d 237, 87 Ill.Dec. 910, 478 N.E.2d 267, 277 (1985). Showing detailed knowledge of the record, the court addressed several major pieces of evidence that Alvarez claims should have raised reasonable doubt in rational jurors. The appellate court gave appropriate deference to the trier of fact, particularly on the several credibility determinations that were crucial to this case. We find that the appellate court's ruling involved a good-faith, thoughtful, and responsible review, as required by the *Jackson* standard. *Gomez,* 106 F.3d at 199; *Lindh,* 96 F.3d at 871. Therefore, we must also reject Alvarez's sufficiency of the evidence claim.

## CONCLUSION

For the reasons set forth above, we deny Alvarez's petition for a writ of habeas corpus. The Clerk of the Court is instructed to enter judgment pursuant to Federal Rule of Civil Procedure 58, in favor of the respondent.