NO. 4-04-0547

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

          Plaintiff-Appellee,

v.

RONEL ALEXIS LEWIS,

          Defendant-Appellant.

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

McLean County

No. 03CF882

Honorable

James E. Souk,

Judge Presiding.

____________________________________________________________________________________

JUSTICE STEIGMANN delivered the opinion of the court:

Following a January 2004 bench trial, the trial court convicted defendant, Ronel Alexis Lewis, of criminal drug conspiracy (count I) (720 ILCS 570/405.1 (West 2002)) and delivery of a controlled substance (count II) (720 ILCS 570/401(d) (West 2002)).  The court later sentenced him to seven years in prison on each count, to be served concurrently.  

Defendant appeals, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt; and (2) the trial court erred by (a) admitting evidence of a witness's out-of-court statement of identification, (b) entering judgment against him and sentencing him on both counts, and (c) imposing an excessive sentence.  Because we agree that the court erred by entering judgment against defendant on both counts, we vacate his criminal-drug-conspiracy conviction, remand with directions to modify the sentencing order, and otherwise affirm the court's judgment.  

I. BACKGROUND

The State's two key witnesses at defendant's January 2004 bench trial were Lori Clem and Bloomington police detective John Heinlen.  

Clem testified that in June 2003, she lived in Bloomington with Stanley Scott, a heroin user.  Her 25-year-old daughter also stayed there occasionally.  On the evening of June 3, 2003, Clem received a call from a man named Charlie, who was a former neighbor and acquaintance.  Charlie asked Clem if she could get him some crack cocaine.  Clem told Charlie she would not get crack cocaine for him, but he kept calling.   At some point, after Scott told her to find out how much crack cocaine Charlie wanted, Clem finally agreed to get some for him.  Clem then contacted the people who lived across the alley behind Clem's house about Charlie's request:  Marcella Miramontes, a friend of Clem's daughter; Miramontes' boyfriend; and defendant, whom Clem knew by his nickname, Rail.  Clem explained that she decided to contact them because Miramontes knew that Scott was a heroin addict, and she had told Clem that if she ever needed "anything," to call her.  Although Clem never purchased any drugs from Miramontes, Miramontes had told Clem that Miramontes "just got a bunch of stuff and she doesn't know anybody, and if I could help her out, she would help me out."

   Clem also stated that for about three or four weeks prior to the incident, she had often seen defendant in the alley next to their residences, working on his car.  She would wave and say "hello" to him but never really spoke to him beyond that. Clem knew defendant's phone number because she would occasionally give rides to Miramontes, who had given Clem the number. 

Clem spoke with defendant about Charlie's request, explaining that Charlie and a friend wanted to get $100 worth of crack cocaine.  Defendant told her to call him when Charlie and his friend arrived.  A short time later, Charlie and another man pulled up in Clem's driveway.  Clem called defendant, and he told her to get the money from Charlie and bring it to him.  Clem then got $100 in cash from Charlie and walked toward defendant's house.  She saw defendant standing near the back of her house, and he motioned for her to walk to her back porch.  She followed his directions and met him on her back porch, where she gave him $80 in cash and kept $20.  Defendant removed a cellophane package (which was later identified as containing 0.5 grams of a substance containing cocaine) from his mouth and handed it to her.  He then walked back to his residence, and Clem walked back to the car.  When she handed the package to Charlie, she recognized the driver as a local detective.  She asked him if he was a police officer, but he said, "no," and he and Charlie drove off.  

Clem acknowledged that she had two prior convictions: obstructing justice in 1993 and felony retail theft in 1994.  She also had five felony cases that were then pending.  She had pleaded guilty to at least one count in each of those pending cases and was awaiting sentencing, which was scheduled to be held the following week.  Clem explained that her attorney told her that agreeing to cooperate with the police and the State's Attorney's office and testify at defendant's trial "might help with [her] cases."  However, no one had made any specific promises as to what would happen as a result of her cooperation.  Her attorney told her "to just go tell the truth and testify and that it would help on [her] case."  She was hoping that her testimony would help, but she was "here to tell the truth." 

Clem also acknowledged that two months earlier, she had pleaded guilty to her role in the June 3, 2003, controlled-substance delivery.  When she pleaded guilty, she had not yet spoken to the prosecutor about testifying against defendant.  

On cross-examination, Clem was confronted with a police report that indicated she was not given the money until she came back to the car with the cocaine and handed it to Charlie.  Clem maintained that the police report was not correct and the sequence of events occurred as she had testified.  

Heinlen testified that in June 2003, he was working undercover in the vice and narcotics unit.  He was working with Charlie, who was a confidential informant, in an effort to buy crack cocaine from Clem and identify her supplier.     

After Charlie and Heinlen phoned Clem, Heinlen drove to her residence with Charlie as a passenger.  Heinlen gave Charlie $100 in cash to purchase crack cocaine from Clem.  Clem approached the car, and as they spoke with her, a man (later identified as defendant) appeared from the alley behind her house.  Heinlen estimated he first saw defendant from about 30 yards as he walked toward the car from the alley.  Defendant got as close as 10 to 15 yards from the car.  It was still daylight, and Heinlen had no difficulty seeing defendant clearly.  After Clem got the money from Charlie and walked away from the car, Heinlen saw defendant meet with her, and then they walked behind Clem's residence, out of Heinlen's sight.  (Heinlen testified that Clem was correct that she was given money prior to the meeting with defendant and he made a mistake in writing his report otherwise.) 

A short time later, Heinlen saw Clem walking back toward the car and defendant walking back toward the alley.  When Clem came back to the car, she spoke to Heinlen and asked if he was a police officer and wearing a wire.  Heinlen lifted up his shirt to show her that he was not wearing a wire, and she handed him the cocaine.  

On June 4, 2003, Bloomington detectives arrested Clem and brought her to the police department.  Heinlen spoke to her there, and she admitted that she had delivered cocaine to him the previous day.  Clem then identified defendant by his nickname, Rail, as being the person that Heinlen had seen her meet during the transaction.  After learning that nickname, Heinlen obtained a photograph of defendant and showed it to Clem.  When the prosecutor asked Heinlen how Clem reacted upon seeing it, defendant objected on the ground that her response would be hearsay.  The prosecutor responded that this testimony was an admissible prior identification, and the trial court permitted it, upon determining that it was admissible under section 115-12 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115-12 (West 2002)).  Heinlen then testified that Clem stated that the person in the photograph was "Rail," who sold her the crack cocaine on June 3, 2003.  Heinlen also stated that when he looked at the photograph, he immediately recognized defendant.

Defendant presented alibi testimony from his mother, father, brother, and cousin, all of whom lived in Milwaukee, Wisconsin.  They testified that defendant arrived in Milwaukee to visit them on the afternoon of June 2, 2003, and did not leave until June 12, 2003.  At least one of defendant's family members saw him each day during this visit.  

After defendant rested his case, the State asked the trial court to take judicial notice of its own file in a McLean County case, which involved several traffic tickets issued to "Ronel A. Lewis" on June 8, 2003.  The court did so, even though the officer who had issued the traffic tickets could not then identify the person to whom he issued the tickets. 

The State also recalled Heinlen, who testified that during the early evening of June 4, 2003, he saw defendant in Bloomington.  Heinlen paid particular attention to defendant on June 4 so as to be able to identify him.

After considering the evidence and the parties' closing arguments, the trial court found defendant guilty of both counts.  The court explained its reasoning, in pertinent part, as follows:  

"Now certainly [Clem], because of her other problems with the law, standing alone, would have credibility problems, and the [c]ourt carefully considered the corroboration presented by the State as to [her] testimony ***.  And that primarily comes from Officer Heinlen [,whose] *** observations are very corroborative of all of [Clem's] testimony and, in fact, [in] a rather unusual twist that one does not usually see, [Clem] was very adamant about a certain point which disagreed with the officer's report and said that her memory was correct and the report must be mistaken, and the officer in fact admitted that he made a mistake in that portion of his report.

* * *

[In response to defendant's alibi,] [t]he State, in rebuttal, has presented a traffic case, *** and the testimony of the officer who issued tickets in the name of Ronel A. Lewis on June 8 of 2003 here in Bloomington. *** 

There is no evidence presented to the [c]ourt that it was a person other than the [d]efendant who received those tickets.  The file in those matters, again, as previously indicated by the [c]ourt when compared with the information in this felony file, including the [d]efendant's date of birth, his [s]ocial [s]ecurity number, his height, his weight, his Illinois license number, and well, that identifying information is all identical ***."

The trial court later sentenced defendant as stated, and this appeal followed.

II. ANALYSIS

A. Sufficiency of the Evidence

Defendant first argues that the State's evidence failed to prove his guilt beyond a reasonable doubt.  Specifically, he contends that (1) Clem's testimony was not credible and (2) the credible testimony of his mother, father, brother, and cousin exculpated him.  We disagree.  

In 
People v. Collins
, 214 Ill. 2d 206, 217, 824 N.E.2d 262, 267-68 (2005), the supreme court addressed a challenge to the sufficiency of the State's evidence and wrote the following:

"We review a challenge to the sufficiency of the evidence to determine '"whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."' (Emphasis omitted.)  
People v. Cox
, 195 Ill. 2d 378, 387[, 748 N.E.2d 166, 172] (2001), quoting 
Jackson v. Virginia
, 443 U.S. 307, 318-19, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2788-89 (1979).  We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.  [Citation.]  In reviewing the evidence, it is not the function of the court to retry the defendant, nor will we substitute our judgment for that of the trier of fact."  

In 
People v. Cunningham
, 212 Ill. 2d 274, 818 N.E.2d 304 (2004), the supreme court addressed a defendant's attack on the sufficiency of the State's evidence based on his claim that the testimony of a particular witness was not worthy of belief.  In so doing, the court discussed the reviewing court's role as follows:  

"The reviewing court must carefully examine the record evidence while bearing in mind that it was the fact finder who saw and heard the witness.  [
People v.] Smith
, 185 Ill. 2d [532,] 541[, 708 N.E.2d 365, 369 (1999)].  Testimony may be found insufficient under the 
Jackson
 standard, but only where the record evidence compels the conclusion that no reasonable person could accept it beyond a reasonable doubt.  See, 
e.g., Smith
, 185 Ill. 2d at 545[, 708 N.E.2d at 369] (holding that no reasonable person could find the witness' testimony credible) ***."  
Cunningham
, 212 Ill. 2d at 280, 818 N.E.2d at 308.  

Judged in accordance with the foregoing standards, and after considering the trial court's careful findings as trier of fact, we conclude that the evidence was sufficient to sustain defendant's convictions.  In so concluding, we note that the testimony of defendant's family was rebutted by (1) Heinlen's testimony that he saw defendant in Bloomington on June 3, 2003, and June 4, 2003; and (2) evidence that defendant was issued traffic tickets in Bloomington on June 8, 2003, in addition to Clem's testimony.

B. Identification Testimony Presented Under Section 115-12

Defendant next argues that the trial court improperly allowed Heinlen to testify as to Clem's out-of-court statement identifying defendant's photograph, pursuant to section 115-12 of the Code (725 ILCS 5/115-12 (West 2002)).  In support of his argument, defendant cites two decisions of the First District Appellate Court:  
People v. Bradley
, 336 Ill. App. 3d 62, 782 N.E.2d 825 (2002), and 
People v. Stackhouse
, 354 Ill. App. 3d 265, 820 N.E.2d 1027 (2004).  We decline to follow 
Bradley
 and 
Stackhouse
 because we conclude they were wrongly decided.  We thus reject defendant's argument.

1. 
The
 
Requirements
 
of
 
Section
 
115-12

Section 115-12 of the Code reads as follows:

"A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him."  725 ILCS 5/115-12 (West 2002).

2. 
Bradley
 
and
 
Stackhouse

In 
Bradley
, 336 Ill. App. 3d at 70, 782 N.E.2d at 831-32, the First District added a prerequisite to section 115-12 of the Code, writing, in pertinent part, as follows:

"Before a third person is permitted to testify as to a witness's out-of-court statement of identification [under section 115-12], the witness must first testify as to the out-of-court identification.  ***  When a declarant *** testifies but fails to give testimony concerning his out-of-court statement of identification, it is inadmissible hearsay for a third party *** to testify that the declarant made the out-of-court statement of identification." 

In 
Stackhouse
, 354 Ill. App. 3d at 278, 820 N.E.2d at 1038, the First District adhered to 
Bradley
, holding that section 115-12 requires "the declarant to testify and be subject to cross-examination regarding the out-of-court identification statement 
before
 a third party may testify to the making of such a prior statement of identification by the declarant."  (Emphasis in original.)  
 

By so holding, the First District effectively amended section 115-12 of the Code by adding the following emphasized language to that section:

"A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing 
before
 
any
 
third
 
party
 
testifies
 
about
 
any
 
statement
 
of
 
identification
 
the
 
declarant
 
has
 
given
, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of identification of a person made after perceiving him." 

Regardless of whether the addition of the emphasized language might be good policy, the judiciary cannot, under the guise of construing statutes, amend them to read other than as the legislature has written.  
In this regard, we agree with the views the First District recently expressed in an unrelated case: 

"We may not, under the guise of statutory interpretation, supply omissions, remedy defects, annex new provisions, substitute different provisions, exceptions, limitations or conditions, or otherwise change the law so as to depart from the language employed [by the legislature]."  
Cement Masons Pension Fund, Local 803 v. William A. Randolph, Inc.
, 358 Ill. App. 3d 638, 645, 832 N.E.2d 228, 234 (2005).

3. 
The
 
Authority
 
Underlying
 
the
 
Bradley-Stackhouse
 
Rule

In both 
Bradley
 and 
Stackhouse
, the First District cites authority that is either inapposite or unpersuasive.  For instance, in 
Bradley
, the only authority cited for its holding that the declarant must first testify as to an out-of-court identification before a third person may be permitted to do so are 
People v. Rogers
, 81 Ill. 2d 571, 411 N.E.2d 223 (1980); 
People v. Ford
, 21 Ill. App. 3d 242, 315 N.E.2d 87 (1974); and 
People v. Green
, 204 Ill. App. 3d 461, 563 N.E.2d 61 (1990).  
 
Bradley
, 336 Ill. App. 3d at 70, 782 N.E.2d at 829.  However, 
Rogers
 and 
Ford
 were both decided before the legislature enacted section 115-12 of the Code, effective January 1, 1984.  In fact, the Supreme Court of Illinois in 
People v. Lewis
, 165 Ill. 2d 305, 342-43, 651 N.E.2d 72, 90 (1995), explicitly acknowledged that section 115-12 was enacted to overcome the effect of its decision in 
Rogers
.  

In 
Green
, the First District wrote that, "As implicitly required under section 115-12, evidence of prior identification is not admissible until the declarant has testified and become subject to cross-examination."  
Green
, 204 Ill. App. 3d at 465, 563 N.E.2d at 63.  That statement constitutes not only the holding in 
Green
, but also the 
entire
 discussion on this point.  Absent from 
that discussion is 
any
 explanation as to why the requirement 
Green
 imposed is "implicitly required under section 115-12."   

Stackhouse
 differed from 
Bradley
 in that in 
Stackhouse
, the victim testified that "he did not see the male offender during the course of the robbery and did not identify the male offender shortly after the robbery" during a later confrontation the police set up in a parking lot.  
Stackhouse
, 354 Ill. App. 3d at 279, 820 N.E.2d at 1039.  Citing 
Bradley
, 
Stackhouse
 concluded that a police officer's testimony that the victim identified both offenders in the parking lot was inadmissible hearsay, explaining as follows: 

"Clear and unequivocal testimony that no identification was ever made of the defendant by the victim of the crime precludes the admissibility of an out-of-court identification statement by a third party no less so than when no testimony is elicited from the victim regarding 'his out-of-court statement of identification.'  
Bradley
, 336 Ill. App. 3d  at 70."  
Stackhouse
, 354 Ill. App. 3d at 279, 820 N.E.2d at 1039.  

In reaching this conclusion, 
Stackhouse
 cited 
People v. Johnson
, 255 Ill. App. 3d 547, 558, 626 N.E.2d 1073, 1081, (1993), as holding that "a sufficiently reliable basis for admitting prior inconsistent statements as substantive evidence must be shown to satisfy constitutional due[-]process requirements."  
Stackhouse
, 354 Ill. App. 3d at 280, 820 N.E.2d at 1040.    However, because 
Johnson
's analysis was both seriously flawed and involved an unrelated section of the Code--section 115-10.1 (Ill. Rev. Stat. 1991, ch. 38, par. 115-10.1 (now 725 ILCS 5/115-10.1 (West 2002)))--it should not have been used to inform the 
Stackhouse
 court regarding the application of section 115-12.

Citing three federal cases (
United States ex rel. White v. Lane
, 785 F. Supp. 768 (N.D. Ill. 1992)
; 
United States v. Leslie
, 542 F.2d 285 (5th
 Cir. 1976); and 
Vogel v. Percy
, 691 F.2d 843 (7th
 Cir. 1982)), the 
Johnson
 court concluded that due-process considerations required (apparently in addition to the other foundational requirements of section 115-10.1) that the State show the following before it can use a witness's prior inconsistent statement against the defendant on trial:

"(1) the declarant is available for cross-examination; (2) the statement was made shortly after the events being related and the statement was transcribed properly; (3) the declarant knowingly and voluntarily waived the right to remain silent; (4) the declarant admits making the statement; and (5) there is some corroboration of the statement's reliability."  
Johnson
, 255 Ill. App. 3d at 558, 626 N.E.2d at 1081.  

The 
Johnson
 court further concluded as follows:

"[B]efore a prior inconsistent statement is admissible for constitutional purposes, the trial court must make a finding that there is sufficient evidentiary basis from which a jury could find that the declarant's prior statements were knowing and voluntary. The resolution of that question, however, is an issue of fact for the jury to determine."  
Johnson
, 255 Ill. App. 3d at 559, 626 N.E.2d at 1081.

The 
Johnson
 court's reliance on 
Vogel
, 
Leslie
, and 
White
 is misplaced.  
Vogel
 dealt with additional constitutional requirements surrounding a Wisconsin prior-inconsistent-statement statute, not the Illinois statute, and no reason exists to believe that the same analysis should apply to section 115-10.1 of the Code.  
Vogel
, 691 F.2d at 846.

Leslie
 was concerned exclusively with applying Federal Rule of Evidence 803(24) (the so-called "residuary exception" of the federal rules).  That case did not even address the language in then-proposed Federal Rule of Evidence 801(d)(1), dealing with prior inconsistent statements--much less any state rules governing the admissibility of prior inconsistent statements as substantive evidence--except to note that, as of 1974, this law was in a state of flux.  
Leslie
, 542 F.2d at 289-91.  

The federal district court's decision in 
White
 indicated in 
dicta
 
that the State's use of a witness's prior inconsistent statement would have violated the defendant's due-process rights because it was not admitted in accordance with the 
Vogel
 guidelines.  
White
, 785 F. Supp. at 776.  However, the 
White
 decision, written in 1992, contains its own impeachment where it states--eight years after the enactment of section 115-10.1 of the Code--"There is no question that, under Illinois law, prior inconsistent statements may be used to attack the credibility of a witness but may not be used to establish the truth of the content of the statements."  
White
, 785 F. Supp. at 775 n.3.

A further indication that 
Johnson
 was wrongly decided lies in the decision of the Seventh Circuit Court of Appeals in 
Johnson v. Washington
, 119 F.3d 513 (7th Cir. 1997), in which the same defendant sought 
habeas
 
corpus
 relief and was turned down.  In 
that case, the Seventh Circuit noted that the defendant argued that, in order for a prior inconsistent statement to be admitted as substantive evidence, in addition to meeting the formal requirements of section 115-10.1 of the Code, the trial court was required to make an additional determination that the prior inconsistent statement was reasonably reliable and trustworthy.  
Johnson
, 119 F.3d at 518-19.  The Seventh Circuit, in an opinion by Judge Bauer (the same judge who wrote 
Vogel
), rejected this argument, explaining as follows:

"[I]n 
People v. Morales
, [281 Ill. App. 3d 695, 666 N.E.2d 839 (1996),]the Illinois Appellate Court recently decided this precise issue against Johnson's position.  In 
Morales
, the defendant argued that the trial court must consider constitutional due[-]process factors before admitting a prior inconsistent statement pursuant to [section] 115-10.1.  
Morales
, 281 Ill. App. 3d at 702-04, *** 666 N.E.2d at 844-45.  In support of his due[-]process argument, the defendant in 
Morales
 ***
 argued that 
Johnson
[] required *** that the trial court must initially determine the reliability of a statement by using the guidelines set forth in federal case law, specifically 
Leslie
 and 
Vogel
.  The Illinois Appellate Court responded by first explaining the rationale behind the Illinois legislature's adoption of [section] 115-10.1.  The legislature believed that prior inconsistent statements should be admitted substantively because:  (1) the prior statement was made closer in time to the event in question than the statement at trial; (2) parties need protection from turncoat witnesses; (3) the witness is available for cross-examination, eliminating hearsay concerns of unavailability; and (4) the admission of such statements furthers the search for truth in a criminal proceeding.  
Morales
, 281 Ill. App. 3d at 702, *** 666 N.E.2d at 844 (citing Robert J. Steigmann, 
Prior
 
Inconsistent
 
Statements
 
as
 
Substantive
 
Evidence
 
in
 
Illinois
, 72 Ill. B.J. 638 (1984)).  The 
Morales
 court also noted that there were other safeguards incorporated into the statute to foster reliability, such as the requirements that the witness is available for cross-examination and that the statement is made under oath or connected to the witness' personal knowledge.  
Id
.  The 
Morales
 court therefore concluded that [section] 115-10.1 adequately protects constitutional rights independently, and that the Illinois legislature 'clearly intended the statute to be the only inquiry necessary in determining whether to admit prior inconsistent statements.'  
Morales
, 281 Ill. App. 3d at 703, *** 666 N.E.2d at 844-45.  More specifically, the 
Morales
 court found that the requirements in the statute adequately safeguarded both the due[-]process rights addressed in [
California v.] Green
[, 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970)] (and disputed in this case) and rights under the Confrontation Clause.  

* * *

We agree with the discussion of the due[-]process issue in 
Morales
."  
Johnson
, 119 F.3d at 521-22.

We agree both with the Seventh Circuit's characterization of the First District opinion in 
Morales
 and the substance of that opinion regarding section 115-10.1 of the Code.  Our agreement should come as no surprise, given that we rendered a decision nine months before 
Morales
 in which we reached the same conclusion.  See 
People v. Carlos
, 275 Ill. App. 3d 80, 84, 655 N.E.2d 1182, 1184 (1995) ("Thus, the fact a statement is admissible under section 115-10.1 of the Code 
already
 demonstrates its reliability, so no 
additional
 evidence of the statement's reliability need be shown" (emphases in original)).

We further note that the First District in 
Morales
 explicitly discussed--and rejected--the application of 
Vogel
 and 
Leslie
, noting that both decisions predate the enactment of section 115-10.1 of the Code.  
Morales
, 281 Ill. App. 3d at 703, 666 N.E.2d at 844.  Since 
Morales
 and 
Carlos
 were decided, the following decisions have also cited approvingly 
Carlos
 or 
Morales
 or both in rejecting the need for the 
Johnson
 requirement of evidence of reliability:  
People v. Pursley
, 284 Ill. App. 3d 597, 608-09, 672 N.E.2d 1249, 1257 (1996) (Second District, citing 
Carlos
 approvingly and explicitly rejecting 
Johnson
); 
People v. Barker
, 298 Ill. App. 3d 751, 760-61, 699 N.E.2d 1039, 1045 (
1998) (First District citing 
Carlos
 approvingly and explicitly rejecting 
Johnson
); 
People v. Wilson
, 302 Ill. App. 3d 499, 505-08, 706 N.E.2d 1026, 1030-32 (
1998) (First District citing 
Morales
 approvingly, explicitly rejecting 
Johnson
's analysis, and deeming 
Leslie
, 
Vogel
, and 
White
 inapposite); 
People v. Govea
, 299 Ill. App. 3d 76, 85-86, 701 N.E.2d 76, 82-83 (
1998) (First District, citing 
Carlos
 and 
Morales
 approvingly, explicitly rejecting 
Johnson
, and deeming 
Leslie
 and 
Vogel
 inapposite); and 
People v. Tolliver
, 347 Ill. App. 3d 203, 218, 807 N.E.2d 524, 538-39 (1st
 Dist. 2004) (citing 
Morales
 and 
Barker
 approvingly).  By approvingly citing 
Johnson
 regarding its requirement for reliability, the 
Stackhouse
 court overlooked these other, more recent decisions of the First District, which have explicitly rejected 
Johnson
's reliability requirement.  

Given that we strongly disagree with 
Johnson
, we even more strongly object to expanding that flawed holding to section 115-12 of the Code (as 
Stackhouse
 purports to do), dealing with the admissibility of a prior identification.  

4. 
Comparison
 
to
 
Federal
 
Rule
 
of
 
Evidence
 
801(d)(1)(C)

As Professor Michael H. Graham has written, section 115-12 of the Code was taken from Federal Rule of Evidence 801(d)(1)(C).  M. Graham, Cleary & Graham's Handbook of Illinois Evidence §611.16, at 468 (8th
 ed. 2004).  A comparison of section 115-12 to Rule 801(d)(1)(C) makes this relationship evident.  Rule 801(d)(1)(C) provides that a statement "is not hearsay if *** [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is *** one of identification of a person made after perceiving the person."  Fed. R. Evid. 801(d)(1)(C) (28 U.S.C. app. 852, 901 (2000)).  For all practical purposes, the three requirements of section 115-12 of the Code, rendering a statement not inadmissible by the hearsay rule, are identical to the requirements of Rule 801(d)(1)(C).  Given that the Illinois General Assembly apparently copied the provisions of Rule 801(d)(1)(C) in drafting section 115-12 of the Code, federal decisions interpreting that rule, especially those occurring before 1984 when the General Assembly enacted section 115-12, might be helpful in understanding that section's requirements.  Specifically, we look to whether pre-1984 federal decisions adopted a 
Bradley
-
Stackhouse
 rule requiring the declarant to testify and be subject to cross-examination regarding his out-of-court identification statement 
before
 a third party could testify to the making of that statement.  

Despite the fact that Rule 801(d)(1)(C) is 30 years old, our research has disclosed no case in which a federal court has imposed the 
Bradley
-
Stackhouse
 rule.  In fact, the only case we found on point, 
United States v. Elemy
, 656 F.2d 507, 508 (9th
 Cir. 1981), indicates the federal courts do not recognize any such requirement.

In 
Elemy
, a witness (Hines) testified as to some aspects of her out-of-court identification of the defendant as one of two bank robbers.  Over the defendant's objection, the trial court allowed an FBI agent (McNeal) to testify about Hines' prior identification of the defendant, as well as some identification procedures in advance of her identification about which Hines was not asked.  
Elemy
, 656 F.2d at 508.  The defendant argued on appeal that McNeal's testimony was inadmissible hearsay and not admissible under Rule 801(d)(1)(C).  The Ninth Circuit rejected this argument and explained as follows:

"The plain words of [R]ule 801(d)(1)(C) do not contain the limitation urged by [the defendant], and we decline to read it into the rule.  The reasons for admitting identification statements as substantive evidence are that out-of-court identifications are believed to be more reliable than those made under the suggestive conditions prevailing at trial, and the availability of the declarant for cross-examination eliminates the major danger of hearsay testimony.  [Citations.]  These reasons remain fully applicable when the person who testifies to the statement of identification is not the person who uttered it, so long as the latter also testifies and is available for cross-examination.

In the present case the declarant, Hines, did testify and [the defendant's] counsel was permitted to cross-examine her at great length.  
Nor
 
is
 
there
 
anything
 
in
 
the
 
record
 
to
 
suggest
 
that
 
she
 
was
 
not
 
available
 
for
 
reexamination
 
after
 
Agent
 
McNeal
 
testified
.  The requirement of availability for cross-examination having been met, we conclude that [R]ule 801(d)(1)(C) encompasses the testimony of Agent McNeal concerning the identification statements of witness Hines, and that this testimony was consequently not hearsay."  (Emphasis added.)  
Elemy
, 656 F.2d at 508.

 The emphasized portion of the above quotation constitutes--at least implicitly--a rejection of the 
Bradley
-
Stackhouse
 rule.  Under that rule, the fact that Hines was available for reexamination after McNeal testified regarding Hines' identification statements would not suffice because, when Hines initially testified, she was not asked about the identification statements about which McNeal later testified.

Further support for our conclusion that federal courts do not impose the 
Bradley
-
Stackhouse
 rule appears in Professor Michael H. Graham's Handbook of Federal Evidence, in which 
he writes the following: 

"In short, the text, the legislative history, as well as judicial opinion interpreting Rule 801(d)(1)(C) place no restrictions upon admissibility other than having the alleged out[-]of[-]court declarant in court on the witness stand subject to cross-examination concerning the statement."  M. Graham, Handbook of Federal Evidence §801.13, at 125-27 (5th
 ed. 2001). 

C. Defendant's Claim That Both Convictions Cannot Stand

Defendant next argues that he was improperly convicted of both an inchoate offense and the underlying principal offense (720 ILCS 5/8-5 (West 2002)).  We agree.

The State concedes that in some instances, criminal drug conspiracy is the inchoate offense of the principal offense of delivery of a controlled substance.  See 
People v. Castaneda
, 299 Ill. App. 3d 779, 781, 701 N.E.2d 1190, 1191 (1998); 
People v. Sonntag
, 238 Ill. App. 3d 854, 857, 605 N.E.2d 1064, 1066 (1992).  However, the State contends that in this instance, both convictions may stand because the two crimes, as charged, were not based on the same act--that is, the action in furtherance of the conspiracy was alleged to be the acceptance of payment for the purchase of drugs, 
not
 the delivery of the drugs.  

We reject the State's attempt to distinguish this case from 
Castaneda
 and 
Sonntag
.  Instead, we conclude that this case falls squarely under their precedence.  We thus vacate defendant's conviction of criminal drug conspiracy and let stand his conviction of delivery of a controlled substance.  We further conclude, as did the courts in 
Castaneda
 and 
Sonntag
, that this case need not be remanded for a new sentencing hearing.  See 
Sonntag
, 238 Ill. App. 3d at 857, 605 N.E.2d at 1066 ("[w]e are satisfied that the sentences imposed were not so interrelated as to require a new sentence hearing"). 

D. Defendant's Claim That His Seven-Year Sentence Was Excessive

Last, defendant argues that the trial court abused its discretion by imposing an excessive sentence.  Specifically, he contends that the court failed to strike a proper balance between the protection of society and his rehabilitation.  We are not persuaded.

In 
People v. Fern
, 189 Ill. 2d 48, 55, 723 N.E.2d 207, 210-11 (1999), the supreme court wrote the following:

"[T]he range of sentences permissible for a particular offense is set by statute.  Within that statutory range, the trial court is charged with fashioning a sentence based upon the particular circumstances of the individual case, including the nature of the offense and the character of the defendant. [Citation.]  The sentencing judge is to consider 'all matters reflecting upon the defendant's personality, propensities, purposes, tendencies, and indeed every aspect of his life relevant to the sentencing proceeding.'  [Citation.]"

The supreme court in 
Fern
 also stated that "the reviewing court must proceed with great caution [when considering the propriety of the sentence] and must not substitute its judgment for that of the trial court merely because it would have weighed the factors differently."  
Fern
, 189 Ill. 2d at 53, 723 N.E.2d at 209. 

Defendant was convicted of delivery of a controlled substance, a Class 2 felony.  720 ILCS 570/401(d) (West 2002).  Despite being only 22 years old at the time of sentencing, defendant had 2 prior felony convictions and 10 prior traffic convictions.  The record showed that he had been released from prison on January 13, 2003, and was on mandatory supervised release for two 2001 felony convictions for manufacture or delivery of a controlled substance (cocaine) when he committed the June 3, 2003, offense.  At the sentencing hearing, the trial court noted that defendant's convictions were nonprobationable.  See 730 ILCS 5/5-5-3(c)(2)(F) (West 2002).

A Class 2 felony conviction ordinarily carries a penalty of three to seven years in prison (730 ILCS 5/5-8-1(a)(5) (West 2002)).  However, because of defendant's prior criminal record, he was eligible for an extended term of 7 to 14 years in prison.  730 ILCS 5/5-8-2(a)(4) (West 2002).  Thus, the trial court's imposition of a seven-year prison sentence was the mid-point in the extended-term sentencing range.  

Judged in accordance with the applicable standard of review, we conclude that the trial court did not abuse its discretion by imposing a seven-year sentence upon defendant.

III. CONCLUSION

For the reasons stated, we affirm defendant's conviction and sentence for delivery of a controlled substance, vacate his conviction for criminal drug conspiracy, and remand to the trial court with directions to amend the sentencing order accordingly.  

Affirmed in part and vacated in part; cause remanded with directions.

TURNER and MYERSCOUGH, JJ., concur.