NO. 4-05-0902     Filed 7/19/07

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from
     Plaintiff-Appellee,                    )    Circuit Court of
     v.                                     )    Champaign County
ANTHONY J. NEWBILL,                     )    No. 04CF2071
     Defendant-Appellant.                   )
                                        )    Honorable
                                        )    Thomas J. Difanis,
                                        )    Judge Presiding.
_____

     JUSTICE MYERSCOUGH delivered the opinion of the court:

     On August 16, 2005, following a mistrial due to a hung jury, a subsequent jury found defendant, Anthony J. Newbill, guilty of robbery (720 ILCS 5/18-1 (West 2004)).  On October 3, 2005, because this was defendant's third Class 2 felony, the trial court sentenced defendant as a Class X offender, which carries a term of 6 to 30 years' imprisonment (730 ILCS 5/5-8-1(a)(3) (West 2004)).  On October 3, 2005, the court sentenced defendant to the maximum 30 years.  Defendant also received 328 days of credit for his time spent in custody.  Defendant appealed his conviction and sentence, arguing that (1) the court abused its discretion in admitting a police officer's hearsay testimony; (2) the 30-year sentence was excessive; and (3) defendant must get one additional day of credit for time served.  We affirm.

I. BACKGROUND

     In the early morning hours of November 9, 2004, the 20-

year-old victim, Megan Flaherty, met up with some friends at "Brother's" bar on Green Street in Champaign, Illinois. According to Flaherty's testimony, Flaherty had only consumed Coca-Cola to drink. Flaherty left the bar by herself and began talking on her cellular telephone as she made the one-block walk back to her apartment. Flaherty noticed two men, one of whom she later identified as defendant, walking behind her. The men followed Flaherty to the foot of the stairs leading up to her apartment.

Defendant told Flaherty to hang up her phone and Flaherty said, "No." Again, defendant told Flaherty to hang up her phone. Flaherty said, "No, please don't." Defendant then pulled Flaherty's phone away from her ear and pulled Flaherty's purse off her shoulder. The other man shoved Flaherty to the ground, and the two offenders took off running. Defendant stole Flaherty's purse, which contained her driver's license, credit and debit cards, as well as a digital camera valued at $300.

Flaherty ran upstairs to her apartment, woke up one of her roommates, and fell to the floor crying. Flaherty told her roommate that she had been mugged. The roommate called the police. Champaign police officer Kristy Miller questioned Flaherty at Flaherty's apartment. During the course of their 15- to 20-minute conversation, Flaherty provided Miller with a physical description of the defendant but was unable to provide any description of the other perpetrator. Miller then called

- 2 -

Flaherty's father and told him to cancel Flaherty's credit cards.

Shortly thereafter, the police got a call from the clerk at a local convenience store, who stated that a man had tried to purchase items with a stolen credit card. The man matched the description Flaherty had given police. The store clerk provided the police with a description of defendant's vehicle and the first several characters of the vehicle's license-plate number. Police located a vehicle matching the description and performed a stop. Defendant was the driver of the vehicle. Defendant tried to flee the vehicle on foot but was ultimately apprehended. Upon searching defendant, police found Flaherty's credit cards and driver's license in defendant's pocket.

Police brought Flaherty to a large parking lot to perform a "showup" of defendant. Flaherty remained in the police vehicle, and defendant was situated under a streetlight about 100 feet away. Flaherty asked if defendant could be moved closer, but the police refused for safety reasons. Flaherty told police that she was 85% sure that defendant was the man who had robbed her. Flaherty told the police that the jeans and leather jacket defendant was wearing were a "definite match" with the clothes of the man who had robbed her and that the general build of defendant was a match. However, Flaherty had some doubt because the man who had robbed her had been wearing a red sweatshirt under-

neath the leather jacket and defendant was not wearing a red sweatshirt at the "showup." Also, Flaherty did not feel that she was close enough to the defendant at the "showup" to get a good look at him. After police took defendant away, they showed Flaherty a red sweatshirt that had been in defendant's car. Flaherty thought this was the same red sweatshirt and then felt more certain that defendant was the man who had robbed her.

In court, Flaherty stated that she was 100% sure that defendant was the man who had robbed her. When asked why she was even more certain than she had been at the showup, Flaherty stated that defendant had been less than two feet away from her when he had robbed her. Flaherty had been able to see his facial features very clearly. Flaherty stated that, in contrast, defendant had been standing too far away at the "showup." Now that Flaherty could again get a good look at defendant's facial features in the courtroom, she was 100% certain defendant had robbed her.

The State called Officer Miller as a witness. Miller was the officer who had initially interviewed Flaherty in her apartment after Flaherty's roommates called the police. The State asked Miller "what, if anything, [Flaherty] said to [Miller]" during the apartment interview regarding the incident. The defense immediately objected, arguing that Miller's testimony would constitute hearsay. Following a sidebar conference outside

the presence of the jury, the trial court overruled the defense's objection. Miller was allowed to testify to the content of her 15- to 20-minute interview with Flaherty. Miller testified that Flaherty had provided a description of the individual who had robbed her, and she specifically testified that Flaherty told Miller the robber was:

> "a black male, 5'7" to 5'8", medium build. He had a goatee and a mustache, possibly with some gray in the mustache. Had a dark-colored baseball cap on, a red hoody sweatshirt with a black knee-length leather coat on and jeans."

During the jury instruction conference, the court stated:

> "THE COURT: *** [W]e need to make a record on [the] hearsay objection *** concerning the testimony of *** Officer Kristy Miller. [Defense] objected as to hearsay. [The State] indicated exception of the hearsay rule and that it was an excited utterance. I overruled the objection, allowed the testimony. It was a bit more than I thought it was going to be. Anything surplusage to the excited utterance, I believe, would be harmless error beyond a reasonable doubt

- 5 -

\*\*\*."

A jury thereafter convicted defendant of robbery, and the trial court sentenced defendant as stated. At the hearing on the motion for a new trial, the court again addressed defendant's hearsay objection but this time stated that the testimony was admissible because an officer may testify as to what a victim told her in order to explain subsequent investigatory steps. Again the court held that to the extent the testimony exceeded its legitimate purpose, it was harmless error. This appeal followed.

## II. ANALYSIS

### A. Officer Miller's Testimony

Defendant argues on appeal that Officer Miller's testimony concerning Flaherty's description of defendant was inadmissible hearsay and the trial court erred in admitting said testimony. Evidentiary rulings are within the discretion of the trial court, and this court will not reverse the trial court's ruling absent an abuse of discretion. People v. Caffey, 205 Ill. 2d 52, 89, 792 N.E.2d 1163, 1188 (2001).

The State argues on appeal that this court should affirm the trial court's ruling under the statutory hearsay exception for statements of identification. See 725 ILCS 5/115-12 (West 2004). Though this specific argument was not raised

before the trial court, an appellee may raise any argument in support of the trial court's judgment, provided they have a sufficient factual basis before the trial court. People v. Pinkonsly, 207 Ill. 2d 555, 563, 802 N.E.2d 236, 241 (2003).

Section 115-12 of the Code of Criminal Procedure of 1963 (Code), entitled "Substantive Admissibility of Prior Identification," provides as follows:

> "A statement is not rendered inadmissible by the hearsay rule if (a) the declarant testifies at the trial or hearing, and (b) the declarant is subject to cross-examination concerning the statement, and (c) the statement is one of the identification of a person made after perceiving him." 725 ILCS 5/115-12 (West 2004).

Here, conditions (a) and (b) were clearly met. Flaherty testified at trial and was subject to cross-examination. The question here is whether Flaherty's statement to Miller was "one of identification of a person made after perceiving him."

In People v. Williams, 263 Ill. App. 3d 1098, 638 N.E.2d 207 (1994), the First District answered the identical question in the affirmative. In Williams, a police officer testified about what one of the victims told her "regarding the offender and his clothing, as well as the type and color of his

- 7 -

car." Williams, 263 Ill. App. 3d at 1111, 638 N.E.2d at 216.
The appellate court held that section 115-12 of the Code, a
statutory exception to the hearsay rule, permitted such testi-
mony. Williams, 263 Ill. App. 3d at 1111, 638 N.E.2d at 217.
This court agrees with the holding in Williams.

Further support for this result can be found in deci-
sions by the Illinois Supreme Court. Section 115-12 was born out
of the supreme court's decision in People v. Rogers, 81 Ill. 2d
571, 411 N.E.2d 223 (1980), superseded by statute as stated in
People v. Lewis, 361 Ill. App. 3d 1006, 838 N.E.2d 996 (2005)
(explaining that the requirement stated in Rogers that the
declarant must testify about the identification before the third-
party statement may be admitted was not required by section 115-
12 of the Code). See People v. Lewis, 165 Ill. 2d 305, 342-43,
651 N.E.2d 72, 90 (1995) (noting section 115-12 of the Code was
born out of the Rogers decision). Interestingly, Rogers involved
a physical description similar to the description at issue
herein.

In Rogers, a detective testified that the witness
described the robber's age, height, weight, and hair color, and
said that the robber wore glasses and had a mustache. Rogers, 81
Ill. 2d at 574, 411 N.E.2d at 225. The detective testified he
made a composite sketch based on that description. Rogers, 81
Ill. 2d at 574, 411 N.E.2d at 225. The Rogers court noted that

- 8 -

"the composite and testimony concerning the production thereof constituted extrajudicial statements of identification." (Emphasis added.) Rogers, 81 Ill. 2d at 580, 411 N.E.2d at 228. The Rogers court found, however, that the trial court did not err by admitting into evidence the composite sketch where the witness testified under oath and was subject to cross-examination, and the evidence was admitted as prior identification evidence to corroborate the prosecuting witness's in-court identification of the defendant. Rogers, 81 Ill. 2d at 580-81, 411 N.E.2d at 228. The court held "the trial court correctly admitted the composite sketch and [the witness's] description in evidence as corroboration of his in-court identification of the defendant." Rogers, 81 Ill. 2d at 582, 411 N.E.2d at 229. Thus, it appears that prior to the legislature's enactment of section 115-12 of the Code, the supreme court considered an extrajudicial physical description--such as height and hair color--as "identification evidence."

More recently, the supreme court has indicated that "statements of identification" have been too narrowly construed. In People v. Tisdel, 201 Ill. 2d 210, 218, 775 N.E.2d 921, 926 (2002), the supreme court held that its decision in People v. Hayes, 139 Ill. 2d 89, 138, 564 N.E.2d 803, 824 (1990) (holding that statements that a witness did not identify the defendant from photo books and arrays were not statements of identifica-

tion), too narrowly construed the term "statements of identification." In overruling Hayes, the Tisdel court stated:

> "[T]he Hayes court erred in limiting 'statements of identification' to a witness'[s] actual identification of a defendant. This interpretation mistakenly focuses on the result rather than the process. As a consequence, the trier of fact may be deprived of information necessary to an informed decision concerning a witness'[s] reliability. In contrast, construing 'statements of identification' to include the entire identification process would ensure that a trier of fact is fully informed concerning the reliability of a witness'[s] identification, as well as the suggestiveness or lack thereof in that identification." (Emphasis added.) Tisdel, 201 Ill. 2d at 219, 775 N.E.2d at 926-27.

Here, Officer Miller testified to Flaherty's description of defendant. This was the first step in the "entire identification process." Therefore, the statement was properly admitted.

Justice Cook posits in his special concurrence that "[t]he majority's interpretation of section 115-12 would broaden

- 10 -

it to allow the substantive admission of any discussion of a crime between a victim and a police officer." Slip op. at 15. That is not the case. Section 115-12 by its very terms applies only to statements of identification, and the supreme court has construed statements of identification to include the entire identification process. See Tisdel, 201 Ill. 2d at 219, 775 N.E.2d at 926-27. Our interpretation would not allow the admission of every discussion between a crime victim and a police officer, only those pertaining to identification of a person made after perceiving him.

However, even if the trial court had erred by allowing the statement, any error was harmless. An error is harmless where it appears beyond a reasonable doubt that the error did not contribute to the verdict obtained. People v. Patterson, 217 Ill. 2d 407, 428, 841 N.E.2d 889, 901 (2005). Additionally, an error may be considered harmless where properly admitted evidence overwhelmingly favors a conviction or where the improperly admitted evidence is merely cumulative or duplicates properly admitted evidence. Patterson, 217 Ill. 2d at 428, 841 N.E.2d at 901. Here, the evidence against the defendant was overwhelming. Flaherty testified in court that she was 100% certain that defendant was the man who had robbed her. Police testified that they removed Flaherty's stolen credit cards from defendant's person. Accordingly, we affirm defendant's robbery conviction.

B. Excessive Sentence

Defendant next argues that his maximum-term, 30-year sentence was excessive. Typically, robbery is a Class 2 felony, carrying a prison term of three to seven years. 730 ILCS 5/5-8-1(a)(5) (West 2004) (prison term for a Class 2 felony). However, defendant was eligible to be sentenced under a Class X sentencing scheme of 6 to 30 years' because this was his third Class 2 felony. 730 ILCS 5/5-8-1(a)(3) (West 2004) (prison term for a Class X felony).

In sentencing defendant, the trial court noted defendant's lengthy criminal history, which included one theft conviction, two burglary convictions, two aggravated-battery convictions, one domestic-battery conviction, one conviction for possession of a stolen vehicle, as well as numerous traffic offenses. The court noted that defendant had been sentenced to numerous probationary periods wherein he failed to rehabilitate himself. Further, defendant had been incarcerated in the Department of Corrections (DOC) on at least five prior occasions. The court concluded that this was the type of offense that could be deterred, especially considering that defendant's accomplice was still "out and about."

Defendant's specific argument on appeal is that the trial judge erred in failing to consider three factors in mitigation: (1) that defendant's conduct neither caused nor threatened

serious harm to another (730 ILCS 5/5-5-3.1(a)(1) (West 2004));

(2) that defendant has struggled with drugs and alcohol; and (3)

that defendant admitted fault and expressed remorse for his

actions.  This court will not disturb a sentence absent an abuse

of discretion.  People v. Illgen, 145 Ill. 2d 353, 379, 583

N.E.2d 515, 526 (1991).

In considering defendant's argument, this court notes

that drug addiction is not necessarily a mitigating factor

(People v. Whealon, 185 Ill. App. 3d 570, 574, 541 N.E.2d 865,

867 (1989)), and the trial court was free to find defendant's

remorse to be incredible.  See generally People v. Fern, 189 Ill.

2d 48, 55-56, 723 N.E.2d 207, 211 (1999) (the trial court ob-

serves the defendant and the proceedings and is therefore in a

far better position than a court of review to consider the

relevant factors).

Defendant's remaining argument is that the trial court

failed to consider altogether whether defendant's conduct neither

caused nor threatened serious harm to another.  730 ILCS 5/5-5-

3.1(a)(1) (West 2004).  Defendant's attorney did present evidence

that no one was seriously harmed, and the evidence presented at

trial indicated that defendant did not use a weapon in the

instant offense.  Where a defendant presents evidence in mitiga-

tion, it is presumed that the trial court considered said evi-

dence.  People v. Pippen, 324 Ill. App. 3d 649, 653, 756 N.E.2d

- 13 -

474, 478 (2001). Defendant contends that the trial court's statement that "there really aren't any [statutory factors in mitigation] that apply to this defendant to this type of case" is sufficient to rebut the presumption that the trial court considered evidence that defendant's conduct neither threatened nor caused serious harm.

However, stating that no statutory factors in mitigation <u>apply</u> is different than stating that the trial court did not <u>consider</u> a mitigating factor. Here, the State presented evidence that defendant stole a purse from Flaherty's person and that Flaherty was shoved to the ground in the course of the robbery. The trial court was free to infer that defendant's conduct threatened serious harm; Flaherty might have reacted unpredictably or Flaherty might have injured her head against the concrete in the fall.

Therefore, the trial court did not abuse its discretion in sentencing defendant to the maximum term.

### C. Sentencing Credit

Finally, defendant argues that he is entitled to one additional day of credit for time spent in custody. Typically, a defendant is entitled to credit for any part of any day spent in custody. <u>People v. Johns</u>, 130 Ill. App. 3d 548, 548-49, 474 N.E.2d 739, 740 (1984). Defendant was placed in custody for the instant offense on November 9, 2004. Defendant remained in

custody until he was sentenced on October 3, 2005, and was then immediately remanded to DOC.  Defendant received credit for 328 days served.  Under the general rule in <u>Johns</u>, this period of time spans 329 days.

However, the general rule in <u>Johns</u> of allowing credit for any part of a day in custody does not apply to the day of sentencing if the defendant remains in continuous custody and is remanded to DOC.  <u>People v. Foreman</u>, 361 Ill. App. 3d 136, 157, 836 N.E.2d 750, 768 (2005).  This is exactly what happened in the instant case.  Accordingly, the trial court properly gave defendant 328 days of credit.

### III. CONCLUSION

For the aforementioned reasons, we affirm the trial court's judgment.  As part of our judgment, we grant the State's request that defendant be assessed $50 as costs for this appeal.

TURNER, J., concurs.

COOK, J., specially concurring.

JUSTICE COOK, specially concurring:

After the incident, Officer Miller questioned Flaherty at Flaherty's apartment for 15 to 20 minutes. Flaherty was able to provide a description of the perpetrator, but she was unable to identify him. Flaherty did not know the perpetrator, and she did not have the opportunity at that time to pick him out from a lineup or photo array. Nevertheless, Officer Miller was allowed to testify to the content of her 15- to 20-minute interview. The trial court later expressed concern that the testimony should not have been admitted but that any error was harmless. I agree with the trial court.

A witness's prior inconsistent statement has always been allowed into evidence to impeach the witness. Section 115-12 of the Code, however, allows the <u>substantive</u> admission of a prior "identification of a person made after perceiving him," when the declarant (Flaherty in this case) testifies and is subject to cross-examination. 725 ILCS 5/115-12 (West 2004). Section 115-12 is useful in the situation where a witness identifies a defendant but pressure is brought on the witness and at trial he recants his identification. <u>People v. Miller</u>, 363 Ill. App. 3d 67, 74, 842 N.E.2d 290, 297 (2005). The majority's interpretation of section 115-12 would broaden it to allow the substantive admission of any discussion of a crime between a victim and a police officer. That is improper. An identifica-

tion may be admitted substantively, but other inconsistent statements may be used only for impeachment, i.e., only for the purpose of deciding the witness's credibility. Miller, 363 Ill. App. 3d at 79, 842 N.E.2d at 300. A witness's prior consistent statement is generally inadmissible. Miller, 363 Ill. App. 3d at 80, 842 N.E.2d at 301.

The Williams case, relied on by the majority, has been criticized:

> "A prior statement of identification must
> follow the perception of the perpetrator again
> at a time following the incident. Under the
> [Williams] court's view, any time a victim
> identifies an assailant, the statement of identifica-
> tion will be admissible provided
> the declarant is subject to cross-examination
> at trial. Thus, if a rape victim five days
> later told her mother it was Bob Smith who
> raped her, the statement would be admissible.
> The purpose of the rule permitting introduc-
> tion of a prior statement of identification
> is to permit evidence of an identification
> made after recognizing the assailant on sub-
> sequent observation prior to trial; it is
> not intended to permit introduction of hearsay state-

ments of the victim ***."  M. Graham,
Cleary &  Graham's Handbook of Illinois Evi-
dence §611.16, at 469 (8th ed. 2004).

Professor Graham apparently did not have the situation in mind where the victim knew her assailant.  That was the situation in <u>Miller</u>, where the eyewitness knew the shooter before the incident and recognized him at the time of the incident without any subsequent observation.  In that situation, the eyewitness's statement of identification, subsequently recanted, was admitted under section 115-12 of the Code.  <u>Miller</u>, 363 Ill. App. 3d at 71, 842 N.E.2d at 294.

In the present case, Flaherty did not identify defendant during her conversation with Officer Miller.  Because Flaherty did not know her assailant, she could not identify him without a subsequent observation, such as a photo array or physical lineup.  Miller should not have been allowed to testify to the conversation.